**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

October 25, 2022

<u>**VIA EMAIL AND ECF**</u>
The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>**United States v. Mitchell Pringle, 19-CR-037 (PKC)**</u>

Dear Judge Chen,

  I write on behalf of Mitchell Pringle in connection with his upcoming sentencing currently scheduled for October 31, 2022, at 12 pm. On July 27, 2022, a hearing was conducted, and on October 5, 2022, your Honor ruled that the government met its burden of proof as to violation charges 1-7, and 14. The remaining charges were dismissed.

  In determining the appropriate sentence for Mr. Pringle that is sufficient to address the breach of the Court's trust which is the principal aim of sentencing for a violation of supervised release, the defense respectfully requests that the Court consider the following factors: (1) the conditions at the Metropolitan Detention Center ("MDC"); (2) the fact that Mr. Pringle is facing indictment in New Jersey which will not be resolved until his federal case is resolved; (3) that he will not be receiving any credit for the time he has been detained in the MDC on his New Jersey state case; and (4) that Mr. Pringle's family desperately wants him home. *See* 18 U.S.C. § 3583(g) (citing 18 U.S.C. § 3553(a)(2)(B)-(D)); *United States v. Aldeen*, 792 F.3d at 247, 252 (2d Cir. 2015).

### Conditions at the MDC

  Mr. Pringle has been incarcerated at the MDC since March 29, 2022. Since the onset of the COVID-19 pandemic, the conditions at the MDC have been abhorrent. While we hope to get to the other side of the pandemic – we are not there yet as new variants/subvariants continue to infect and reinfect people at alarming rates. During Mr. Pringle's time at the MDC, lockdowns have been incessant. Lockdowns in the MDC mirror solitary confinement, with detainees being confined to their cells for a minimum of 23 hours a day, social visits suspended and almost no access to phones. In addition to the lack of human contact during lockdowns, access to other basic necessities is

1

significantly limited – only cold food is served, and opportunities to buy hygiene products through commissary is limited.

Judges have recognized that detention at MDC during the coronavirus pandemic has been particularly arduous, sentencing defendants below Guidelines ranges in several cases. As one example, Judge Oetken noted that a defendant had a "really harsh" detention at the MDC and remarked that the detention up to the date of sentencing was "probably twice as punitive as it would otherwise be." *United States v. Ramirez*, No. 20 Cr. 29 (JPO), ECF No. 47 at 19 (S.D.N.Y. Oct. 20, 2020). Judges in the Eastern District of New York, including your Honor, have similarly varied downward and imposed below-Guidelines sentences, because of detention conditions at the MDC. *See United States v. Brown*, No. 20 Cr. 460 (NGG) (E.D.N.Y. March 11, 2022 (imposing 96 months in serial armed robbery case where bottom of guidelines range was 262 months); *United States v. Ricks*, No. 20 Cr. 330 (KAM), ECF No. 24 (E.D.N.Y. Aug. 27, 2021) (37-month downward variance in gun trafficking case due to harsh conditions at the MDC during the pandemic, among other factors); *United States v. Olivier*, No. 19 Cr. 229 (PKC), ECF No. 82 (E.D.N.Y. June 24, 2021) (sentencing 38 months below guidelines range in part due to conditions in BOP); *United States v. Sepulveda*, No. 19 Cr. 229 (PKC), ECF No. 81 (E.D.N.Y. June 24, 2021) (finding that downward variance of 35 months was justified by harsh conditions at the MDC); *United States v. Battle*, No. 20 Cr. 349 (EK), ECF No. 31 (E.D.N.Y. Apr. 22, 2021) (sentencing below guidelines range and noting that defendant's conditions of detention at the MDC "are harsher than usual, given the ongoing pandemic" and that conditions at the MDC were "tantamount to unearned disciplinary segregation or worse"); *United States v. Carpenter*, No. 18 Cr. 362 (GRB), ECF No. 169 (E.D.N.Y. Mar. 29, 2021) ("'[T]he guidelines . . . cannot have considered the effects of COVID and the other problems at MDC on the quality of incarceration. . . [T]he time this defendant's already spent has been more punitive than it otherwise would have been. So I am going to reduce the entire range by 24 months.").

### The New Jersey State Case

As the Court is aware, Mr. Pringle is facing serious state charges in New Jersey. The charges in New Jersey are the basis for charges 2 – 6 and 14 of the violation of supervised release. Because the prosecutors in that case have been unwilling to writ Mr. Pringle over to New Jersey to face those charges until his federal case is resolved, Mr. Pringle has not been produced for any court appearances and has been unable to meaningfully participate in his defense. Additionally, Mr. Pringle is not receiving jail time credit on his New Jersey case for the almost seven months he has spent at the MDC.

### Mr. Pringle's Family Needs and Wants him Home

Attached as Exhibit A is a letter from Shernice Ferdinand, Mr. Pringle's fiancé. It is important for the Court to know that the person that was portrayed during the hearing and in the violation of supervised release reports is not all of who Mr. Pringle is. While Mr. Pringle has made significant mistakes in his life, he is a loving and doting father, whose children rely on him. *See* Exhibit A, Ltr. Shernice Ferdinand.

### Conclusion

The defense respectfully requests the Court consider the above factors, including the attached letter of support, in considering an appropriate sentence for Mr. Pringle.

        Respectfully submitted,

        /s/
        Marissa Sherman
        Assistant Federal Defender
        Attorney for Mitchell Pringle

cc: AUSA John Enright (by ECF and Email)
    United States Probation Officer Ryan Lehr (by Email)

# Exhibit A

October 24, 2022

Dear Honorable Pamela K. Chen,

My name is Shernice Ferdinand and I am the fiance of Mitchell Pringle. We have known each other for about eight years, but only started dating in 2021, this was based on the spiritual connection we share. I say this because I was a single mother of two beautiful children ▇ and ▇ I could'nt have just any man around my children, the individual had to be someone who can love, guide, protect and mold my children. Moreover, my daughter ▇ was diagnosed with Sickle Cell Disease at age five months, she had many complications throughout her life, at age five years she was induced into a medical coma and placed on a ventilator because both lungs collapsed, during that time at the ICU she suffered a left sided ischemic stroke. Due to this she was paralyzed entirely on the right side of her body, to this day she still has weakness and delayed speech. When Mitchell became a part of our family he ensured that she felt like any other child, he jumped right into our routine. He took us to all her bi-weekly blood transfusions, her Physical therapy, occupational therapy sessions, he even went as far as purchasing some equipment that would be used in her therapy sessions and would train her at home. On days that her appointments clash with one of my shifts at work he would take her and I would be able to attend work.

Everyday we start our day by praying as a family, while I get our children ready for school he would prepare breakfast, it was always team work with him, he never left me to do anything alone, after taking the kids to school, we'd both go to the city to purchase merchandise for his

clothing business or we'd be doing deliveries based on availability, he'd then take me to my job and continue either doing his deliveries or going to the house to put together packages. His schedule was based around our family, when our kids are finished school, I am usually still at work, therefore he'd pick them up and get them home, prepare meals for them, do home assignments and get them to bed. Mitchell is overly invested in our kids he would purchase books bi-weekly and have them write compositions on what they've read, when historical days or holidays approach he would find either a video or a writing piece and educate them on it, one example was in black history month, he told ▇ about Harriet Tubman, showed her a movie and also bought her a book, one day her teacher brought the topic for one of their subjects and told them they had to do a project on her, because my daughter knew about her beforehand she was able to do the project with no adult supervision and got full marks for such. When Mitchell stopped showing up at school because he was incarcerated there was great concern from teachers at the school, because he was there everyday, not only was he there everyday, he would take the time to speak with their teachers, even the school crossing guard became concerned about his absence, he was the invested, friendly dad they grew to love. At the hospital my daughter attends it was a greater concern because she was very brave to get stuck by needles when he was around and the moment he wasn't there it was back to her

being afraid. In February, 2022 Mitchell received three phone calls thirty minutes apart from our daughter's school stating she fell on three occasions, the third time he was informed that paramedics were called, based on her symptoms Mitchell told the principal that she was having a stroke and instructed her on what she should do. We both arrived at the school and from the moment she heard an emotionally distraught Mitchell calling her name she responded, she never did when the paramedics were trying to, we got her to the hospital and an MRI and CT scan confirmed she did suffer a stroke and it was resolved, all because of quick action and Mitchell's fatherly instinct, at her four day stay he never left her side.

That same month we found out we were having a baby and we were very excited to welcome our new baby, but that excitement turned into fear when Mitchell was incarcerated on March 24, 2022, a few days later we learned our daughter found a match for a bone marrow transplant, it was bitter sweet because our daughter began having behavioral issues based on Mitchell's absence and because of this she was referred to a psychiatrist, her transplant was postponed from June, 2022 to August 2022. After receiving her transplant on August 23, 2022, we welcomed our son ▅▅▅▅▅ on ▅▅▅▅▅, shortly after we were horrified when she rejected the transplant September 22, 2022. A new date in December, 2022 was set for a transplant to be done and with a new baby it is almost impossible due to the fact that, he

is not allowed to doctor's appointments, because of this we miss these appointments. Our son is now six weeks old and was only able to visit his father three times, those visits are no contact visits, these visits are not enough as we get them once a month, we need him at home with us because he's the steady foundation of our family, it is important for our family that he come home to continue where he left off. We barely hear from him as the prison is on lockdown frequently, he also received molded food on several occasions which forces him not to eat and commissary is almost nonexistent. I can tell you that the man that was portrayed to you, is not the man I know as my husband and the father of my children, I plead with you respectfully to please send Mitchell home to us.

Respectfully,
Shernice Ferdinand

